IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTEL CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| VLSI TECHNOLOGY LLC, | ) |
| | ) |
| Defendant. | ) |

**INTEL CORPORATION'S COMPLAINT FOR A DECLARATORY JUDGMENT THAT IT HAS A LICENSE TO VLSI TECHNOLOGY LLC'S PATENTS**

Plaintiff Intel Corporation ("Intel"), by and through its undersigned counsel, pleads the following against VLSI Technology LLC ("VLSI") and alleges as follows:

**THE PARTIES**

1. Intel is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Santa Clara, California.

2. VLSI is a Delaware limited liability company organized and existing under the laws of the State of Delaware. VLSI's registered agent for the service of process is The Corporation Trust Company, which has an office at Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

3. VLSI is a wholly-owned subsidiary of CF VLSI Holdings LLC, which in turn is owned by ten Delaware LLCs and LPs: FCOF IV UST LLC (the majority member), FTP SIP Investments II LLC, FCO MA LSS LP, FCO MA IV UB Securities LLC, FCO MA II UB Securities LLC, FCO MA SC II Investments LLC, FCO MA Centre Street LP, FCO MA ML Investments II LLC, FCO MA MI LP, and FGOY II Investments LLC. VLSI has largely not identified the ultimate members and partners of the ten Delaware LLCs and LPs beyond indicating

that the ultimate members and partners of FCO IV UST LLC are hundreds of outside investors that include pension and retirement funds, sovereign wealth funds, foundations, high net worth individuals, endowments, and other institutional investors. All ten entities that are members or partners of CF VLSI Holdings LLC are managed by affiliates of Fortress Investment Group LLC.

## JURISDICTION AND VENUE

4. This is an action for declaratory judgment that Intel is licensed to patents owned by VLSI.

5. As further discussed below, the U.S. District Court for the Northern District of California confirmed that a substantial controversy exists between VLSI and Intel regarding such license, but also granted VLSI's motion to dismiss a claim pending before that court based on VLSI's argument that a forum selection clause in the license at issue requires affirmative claims regarding the license be heard in a Delaware court. *VLSI Tech. LLC v. Intel Corp.*, No. 5-17-cv-05671, 2024 WL 1486143 at *1 (N.D. Cal. Mar. 29, 2024); *see also VLSI Tech. LLC v. Intel Corp.*, No. 5:17-cv-05671 (N.D. Cal.), D.I. 868 at 2 (VLSI argument that "Intel is barred from commencing litigation outside of the State of Delaware under the [Patent] License's forum selection clause."). Venue in this District is proper under the license agreement's forum selection clause.

6. Personal jurisdiction and venue in this District are also proper because VLSI is a company organized under the laws of Delaware.

7. "For declaratory judgment suits, the character of the action is judged based on the declaratory judgment defendant's hypothetical complaint." *ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1350 (Fed. Cir. 2011) ("[D]eclaratory judgment jurisdiction exists where the defendant's coercive action arises under federal law" including "where the defense is non-federal

in nature."). Subject matter jurisdiction is therefore analyzed with reference to the defendant's anticipated claim, here a patent infringement action. Because patent infringement actions arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, this Court has subject-matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a), in combination with 28 U.S.C. §§ 2201-2202. In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 to declare Intel's license rights with respect to foreign patents owned by VLSI.

8. As explained in more detail below, an actual controversy exists under the Declaratory Judgment Act. In particular, there is an actual controversy between Intel and VLSI based on at least the following:

- The U.S. counterparts to foreign patents that VLSI previously asserted against Intel abroad, and for which VLSI has not agreed to any covenant not to sue, *see infra* ¶ 20;

- VLSI's infringement actions against Intel in Texas, China, and the Northern District of California, which are either pending or subject to further appeal, *see infra* ¶¶ 14, 18, 19;

- The foreign counterparts to U.S. patents that VLSI previously asserted against Intel, including foreign counterparts to U.S. Patent Nos. 8,268,672, 7,706,207, and 7,292,485, *see infra* ¶ 21;

- The existence of other patents for which prior patent owner NXP Semiconductor ("NXP") committed to provide VLSI with claim charts analyzing infringement;

- At least one as-yet unasserted patent that is now in VLSI's patent portfolio, and for which the prior patent owner, Freescale, created claim charts purporting to show that Intel's products practice the patent claims;

- The fact that VLSI was created by Fortress Investment Group ("Fortress") for the sole purpose of obtaining patents from NXP and asserting them in litigation;

- VLSI's aggressive enforcement campaign against Intel in which VLSI has asserted 23 patents against Intel across six infringement actions in the United States and two infringement actions in China and sought more than $22 billion to date; and

- The fact that VLSI's patent portfolio includes more than 100 additional patents from NXP, a semiconductor designer and manufacturer.

9. For these reasons, an actual and justiciable controversy exists between Intel and VLSI. *See VLSI Tech. LLC v. Intel Corp.*, No. 5:17-cv-05671, 2024 WL 1486143, at *7 (N.D. Cal. Mar. 29, 2024) (holding that the court had subject matter jurisdiction over Intel's counterclaim for a declaratory judgment of license considering in totality "the ongoing actions in Texas and China, the existence of foreign counterparts of patents VLSI previously asserted against Intel, … and the existence of remaining patents in VLSI's portfolio that it could assert against Intel").

## FACTUAL ALLEGATIONS

**I.     VLSI's Serial Lawsuits Against Intel**

10. VLSI was formed in 2016 by Fortress, a New York-based hedge-fund, for the purpose of acquiring patents from NXP. Since its formation, VLSI has acquired more than 170 patent families from NXP for $35 million, and VLSI's only business has been asserting former NXP patents against Intel across multiple jurisdictions.

11. In 2017, VLSI began filing serial patent infringement lawsuits against Intel across multiple jurisdictions.

### A.     *California Action*

12. On October 2, 2017, VLSI filed its first patent infringement lawsuit against Intel in the U.S. District Court for the Northern District of California. *VLSI Tech. LLC v. Intel Corp.*, No. 5:17-cv-05671 (N.D. Cal.) ("California Action"). VLSI originally alleged that Intel infringed U.S.

Patent Nos. 7,268,588; 7,676,806; 7,706,207; 7,709,303; 8,004,922; 8,020,014; 8,268,672; and 8,566,836.

13. VLSI later dropped U.S. Patent Nos. 7,268,588; 7,706,207; 7,709,303; and 8,020,014 from the case.

14. On December 7, 2023, the Northern District of California court granted Intel's motion for summary judgment that it does not infringe two of the four remaining patents-in-suit, the '836 and '922 patents, and that the '922 patent is invalid. *Id.* at D.I. 778 at 55. VLSI subsequently dismissed with prejudice its claims regarding the other two remaining patents, the '806 and '672 patents. *Id.* at D.I. 799. VLSI has not withdrawn, dismissed, or granted a covenant not to sue on its claims regarding the '836 or '922 patent. To the contrary, VLSI has appealed the summary judgment ruling on the '836 and '922 patents with the goal of continuing to assert those patents against Intel.

### B. *Delaware Actions*

15. VLSI next filed a patent infringement lawsuit against Intel in this Court in June 2018: *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, D.I. 1 (D. Del.) ("Delaware Action"), which was assigned to Chief Judge Colm Connolly. VLSI originally alleged that Intel infringed U.S. Patent Nos. 7,246,027; 7,247,552; 7,523,331; 8,081,026; and 6,212,633. VLSI subsequently dropped U.S. Patent No 6,212,633 from the case. VLSI's claims regarding U.S. Patent No. 8,081,026 and U.S. Patent No. 7,247,552 were stayed pending resolution of related *inter partes* review proceedings. On December 27, 2022, VLSI agreed to dismiss all its claims with prejudice. *See infra* ¶¶ 32-34.

16. VLSI filed a second action in this Court in March 2019, asserting six more patents against Intel. *VLSI Tech. LLC v. Intel Corp.*, No. 19-426-CFC, D.I. 1 (D. Del.). That action was

also assigned to Chief Judge Connolly. A month later, VLSI voluntarily dismissed that action and re-filed it as three separate actions (with two additional patents) in the Western District of Texas.

### C. *Texas Actions*

17. On April 11, 2019, VLSI filed three patent infringement lawsuits against Intel in the U.S. District Court for the Western District of Texas. No. 6:19-cv-00254, D.I. 1 (W.D. Tex.) (now No. 6:21-cv-00057) ("First Texas Action"); No. 6:19-cv-00255, D.I. 1 (W.D. Tex.) (now No. 6:21-cv-00299) ("Second Texas Action"); No. 6:19-cv-00256, D.I. 1 (W.D. Tex.) (now No. 1:19-cv-00977) ("Third Texas Action"). VLSI originally alleged that Intel infringed U.S. Patent Nos. 8,156,357; 7,523,373; 7,725,759; 7,793,025; 7,606,983; 7,292,485; 6,633,187; and 6,366,522.

18. The three actions in the Western District of Texas proceeded to trial in 2021 and 2022. The first case resulted in a $2.18 billion jury verdict against Intel, which the Federal Circuit subsequently vacated. *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1348-49 (Fed. Cir. 2023). The second case resulted in a defense verdict for Intel. No. 6:21-cv-00299, D.I. 549 (jury verdict). The third case resulted in a $949 million jury verdict, as to which post-trial motions are pending. No. 1:19-cv-00977, D.I. 690 (jury verdict).

### D. *China Actions*

19. On May 5, 2019, VLSI filed two patent infringement lawsuits against Intel in China: one in Shanghai (the "Shanghai Lawsuit") and another in Shenzhen (the "Shenzhen Lawsuit"). In the Shanghai Lawsuit, VLSI alleged that Intel infringed Chinese patent ZL201080024173.7. That patent was found not to be infringed, but VLSI has appealed. In the Shenzhen Lawsuit, VLSI alleged that Intel infringed Chinese patent ZL201410094015.9. That patent was found to be invalid.

### E. *U.S. and Foreign Counterparts*

20. VLSI's patent portfolio includes U.S. patents that are counterparts to Chinese patents VLSI has asserted against Intel in China. For example, U.S. Patent No. 9,304,880 (the "'880 patent") is the U.S. counterpart to Chinese patent ZL201410094015.9 (the "'015 patent"), which VLSI asserted against Intel in the Shenzhen lawsuit. The '880 patent's written description is identical to that of the '015 patent asserted against Intel in the Shenzhen lawsuit and the '880 patent contains substantially identical claims. Specifically, claims 1-6, 7-14, 15, and 16-20 of the '880 patent contain identical elements as claims 1-6, 9-16, 18, and 22-26 (respectively) of the '015 patent. VLSI has not granted Intel a covenant not to sue on this patent.

21. VLSI's patent portfolio also includes foreign counterparts of patents it has asserted against Intel in the U.S. For example, VLSI has Chinese counterparts to two patents asserted against Intel in the California Action: Chinese patent CN100583432C is a foreign counterpart to U.S. Patent No. 8,268,672 ("'672 patent"), and Chinese patent CN101443851B is a foreign counterpart to U.S. Patent No. 7,706,207 ("'207 patent"). Although VLSI granted Intel a covenant not to sue with respect to the '672 patent, it did not grant a covenant for the foreign counterpart. VLSI dropped its infringement allegations regarding the '207 patent prior to serving expert reports in the California Action, but it did not grant Intel a covenant not to sue on the '207 patent or the Chinese counterpart. VLSI's portfolio also includes Chinese patent CN101496107B, which is a foreign counterpart to U.S. Patent No. 7,292,485 ("'485 patent") that was asserted against Intel in the Third Texas Action. Although VLSI dropped the '485 patent before trial, it did not grant Intel a covenant not to sue on its foreign counterpart.

\* \* \*

22. In total, VLSI has asserted 23 patents against Intel across these eight cases and sought more than $22 billion in damages.

## II.     Intel's License To VLSI's Patents

23. In 2012, Finjan Software, Inc. and Finjan, Inc. ("Finjan Parties"), "each signing on their own behalf and on behalf of their respective Affiliates," granted Intel a license to all of their and their "Affiliates'" patents ("Patent License"). *See infra* ¶¶ 49-50. The term "Affiliates" is defined broadly in the Patent License to include future affiliates and entities under common control with the Finjan Parties.

24. The Patent License contains a choice of law and forum selection clause stating: "This Agreement shall be interpreted in accordance with and governed by federal law or, where applicable, the laws of the State of Delaware, without giving effect to the choice-of-law rules of Delaware. All disputes and litigation regarding this Agreement and matters connected with its performance shall be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware pursuant to 10 Del. C. Section 346 or the United States District Court for the District of Delaware." Ex. A, §11.4.

25. In July 2020, Fortress—which formed and controls VLSI—acquired control of Finjan Holdings LLC ("FHL"), and through it, acquired control of the Finjan Parties. *See infra* ¶¶ s64-70. Fortress's acquisition of FHL triggered Intel's rights under the Patent License to practice patents owned by VLSI, as an "Affiliate" of the Finjan Parties, because VLSI and the Finjan Parties are under the common control of Fortress. *See infra* ¶ 71.

## III.    Intel's Attempts to Vindicate Its Rights Under the Patent License

26. Under the Patent License, Intel was required to seek resolution of any agreement-related disputes through a mandatory Dispute Resolution Process.

27. Intel initiated that process in August 2020 by sending notice to the Finjan Parties, VLSI, and Fortress that Fortress's acquisition of FHL meant Intel had a license to VLSI's asserted patents.

28. Intel then began attempting to vindicate its rights under the Patent License in court.

### F.   *Delaware Court of Chancery*

29. On January 11, 2021, Intel filed an action in the Delaware Court of Chancery against VLSI, Fortress, FHL, and other parties related to FHL. No. 2021-0021-MTZ, D.I. 1 (Del. Ch. Ct.) ("Chancery Court Action"). Each defendant moved to dismiss that Complaint on various grounds, including filing supplemental briefing arguing that the Chancery Court lacked subject matter jurisdiction because Intel had an adequate remedy at law in the District Court actions VLSI had filed against Intel.

30. The Chancery Court dismissed part of Intel's complaint solely on the ground that Intel had an adequate remedy at law. *Intel Corp. v. Fortress Investment Group, LLC, et al.*, No. 2021-0021-MTZ, 2021 WL 4470091 (Del. Ch. Sept. 30, 2021). The court found that "Intel may present its license defense in" VLSI's then-pending lawsuit against Intel in this District or in "the first-filed forum, the California Action." *Id.* at *9 & n.77.

31. As explained below, however, Intel was unable to vindicate its license rights in either of these forums.

### G.   *Intel's Attempts to Litigate its License Rights in Federal Court*

32. **<u>Delaware Action</u>**: In the Delaware Action, Intel amended its Answer, Defenses, and Counterclaims to add an affirmative defense of license on July 6, 2021. No. 18-966-CFC (D. Del.) at D.I. 722. The parties proceeded through a period of fact discovery and filed cross motions for summary judgment regarding Intel's affirmative defense of license on January 18,

9

2022. *Id.* at D.I.s. 799, 804. The parties completed briefing on the motions for summary judgment on March 8, 2022. *Id.* at D.I.s. 905, 909.

33. On August 1, 2022, the court found that VLSI had not complied with its April 18, 2022 Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1. *Id*. at D.I. 975 ("These disclosures are clearly inadequate to meet the requirements of the Rule 7.1 Disclosure Order, and that failure raises questions about whether VLSI has complied with the Litigation Funding Order."). The court ordered the case stayed until VLSI complied with the Rule 7.1 Disclosure Order. *Id*.

34. On December 27, 2022, before the court had ruled on the parties' motions for summary judgment, VLSI agreed to dismissal of all of VLSI's claims with prejudice with neither party paying any money. *Id.* at D.I. 998.

35. **<u>California Action</u>**: On December 21, 2021, Intel amended its Answer, Defenses, and Counterclaims to assert an affirmative defense of license in the California Action. No. 5:17-cv-05671 at D.I. 334. After agreeing to forgo additional discovery in light of the recent discovery conducted in the Delaware Action, the parties filed cross-motions for summary judgment on Intel's license defense. In December 2023, the court resolved most of the legal disputes in favor of Intel but ultimately denied both motions and determined that the defense should be decided at trial based on the narrow question of whether VLSI and the Finjan Parties are under common control of Fortress. *VLSI Tech. LLC v. Intel Corp.*, No. 17-cv-05671, 2023 WL 9052312, at *10 (N.D. Cal. Dec. 20, 2023) ("Whether VLSI and the Finjan Parties are under common control by Fortress is an issue of fact. … VLSI and Intel have both presented evidence that creates a genuine dispute of material fact.").

36. In that order, the court made the following additional findings: *first*, "under Delaware law in certain circumstances, a non-signatory created after a contract is signed can still be bound by the contract"; *second*, "non-signatory entities meeting the definition of 'Affiliates' (as defined by the Patent License Agreement) of the Finjan Parties can be bound by the agreement, including later acquired or formed 'Affiliates'"; *third*, should a factfinder find that Fortress controls Finjan, "any entities controlled by Fortress are bound" by the "Finjan License Agreement"; and *fourth*, "patents belonging to Affiliates of Finjan, as defined by the Finjan License Agreement, are subject to the license to Intel described therein." *Id.* at **5, 6, 8, 11.

37. Shortly after the court's summary judgment order, VLSI granted Intel a covenant not to enforce the only two patents remaining for trial, the '806 and '672 patents. *See* No. 5:17-cv-05671 at D.I. 798-2 & D.I. 799. The court found that this covenant mooted Intel's affirmative defense as there were no longer any live infringement claims. *Id.* at D.I. 807.

38. However, the court granted Intel's motion to amend its Answer, Defenses, and Counterclaims to add a declaratory judgment counterclaim that it is licensed to VLSI's patents. *Id.* at D.I. 854. VLSI then moved to dismiss Intel's counterclaim, arguing that the court lacked jurisdiction to hear Intel's counterclaim and that "Intel is barred from commencing litigation outside of the State of Delaware under the Finjan License's forum selection clause." *Id.* at D.I. 868 at 2. The court held that a substantial controversy exists between VLSI and Intel that warrants the issuance of a declaratory judgment considering "the ongoing actions in Texas and China, the existence of foreign counterparts of patents VLSI previously asserted against Intel, … and the existence of remaining patents in VLSI's portfolio that it could assert against Intel." 2024 WL 1486143, at *7. But the court granted VLSI's motion solely on the ground that the license's forum selection clause requires that any affirmative claims regarding the Patent License can only be heard

11

in a Delaware court. *Id.* at *1 (agreeing with VLSI's argument "that the license's forum selection clause requires that as pled [Intel's counterclaim] may only be heard in Delaware."), *4 ("[T]he forum selection clause requires that a standalone claim or counterclaim that the Finjan License Agreement grants Intel a license to use VLSI's patents must be brought in Delaware Chancery Court or Delaware District Court."). The court entered final judgment dismissing all remaining claims in the California Action on March 29, 2024. *Id.* at D.I. 905.

39. **<u>Texas Actions</u>**: Intel first asserted its license rights in the First Texas Action in September 2020 when it moved to stay that case, which at that point was only a few months from trial. No. 1:19-cv-00977 at D.I. 188. Intel moved to amend its Answer, Defenses, and Counterclaims in the First Texas Action to add an affirmative defense of license on November 10, 2020. No. 6:21-cv-00057 at D.I. 348-02. It subsequently moved to amend to add the same defense in the Second and Third Texas Actions on February 2, 2021. No. 1:19-cv-00977 at D.I. 425.

40. The court denied Intel's Motion to Amend in the First Texas Action on March 18, 2022—one year after trial in that matter concluded. No. 6:21-cv-00057 at D.I. 694. The court denied Intel's Motion to Amend in the Third Texas Action on November 7, 2022. No. 1:19-cv-00977 at D.I. 651. On December 4, 2023, the Federal Circuit reversed the Texas court's denial of Intel's Motion to Amend in the First Texas Action. *VLSI Technology LLC*, 87 F.4th at 1352. The Federal Circuit explained that "the Delaware Supreme Court stated that '[c]ontracts may impose obligations on affiliates' in certain contexts" and found that the lower court's conclusion that the license argument was futile was "wrong as a matter of law." *Id.* at 1351-52.

41. The Federal Circuit's mandate issued on March 14, 2024. *VLSI Technology LLC v. Intel Corp.*, No. 22-1906, D.I. 79 (Fed. Cir. March 14, 2024). The Texas court has not yet issued any scheduling order in the First Texas Action, nor formally granted Intel's Motion to Amend its

12

Answer to add the license defense into the case. *See* No. 6:21-cv-00057 at D.I. 743. Intel has moved to stay the First Texas Action pending resolution of VLSI's appeal in a related *Inter Partes* Review proceeding, where the PTAB found unpatentable all claims of the '373 patent—the only patent remaining in the First Texas Action. *Id.* at D.I. 737.

42. The court recently granted Intel's renewed Motion to Amend in the Third Texas Action (No. 1:19-cv-00977 at D.I. 829), but it has not yet ruled on the parties' post-trial motions.

### CLAIM FOR RELIEF– DECLARATORY JUDGMENT THAT INTEL HAS A LICENSE TO VLSI'S PATENTS

43. Intel repeats and realleges the allegations set forth in paragraphs 1 through 42 of this Complaint, above, as if set forth fully herein.

44. Intel contends that it has a license to all VLSI patents that fall within the Effective Period as defined in the Patent License, while VLSI contends that Intel is not licensed to any of its patents.

45. Intel is entitled to a declaratory judgment that it has a valid license to all patents owned by VLSI that fall within the Effective Period as defined in the Patent License.

46. This lawsuit is now Intel's ninth attempt to litigate its rights under the Patent License. Intel has raised or attempted to raise its rights as a defense to VLSI's infringement claims in seven patent infringement lawsuits VLSI brought against Intel and in a separate action before the Delaware Chancery Court. But to date, Intel has been unable to receive a full resolution of the issues raised by Intel's license defense.

47. In the Texas cases where Intel's license defense remains a live issue, the defense is no further advanced than in this case: the defense has just been added to Intel's Answer, Defenses, and Counterclaims in the Third Texas Action, but the court has not ruled on Intel's renewed motion to add the defense to the First Texas Action. However, Intel's defense in both the Texas cases is

13

in the form of an affirmative defense that VLSI will argue is tied to the specific infringement actions brought by VLSI. Thus, the Court may never reach the license defense in those cases if VLSI's infringement claims are resolved against VLSI on other grounds or VLSI once again strategically abandons select patents to try to block consideration of the license issue. Intel therefore brings this action to finally resolve not only Intel's license rights, but also VLSI's broader, worldwide patent infringement campaign.

48. As demonstrated below, the facts show that VLSI is bound to the Patent License and that Intel holds a license to VLSI's patents.

### H. *Finjan and Intel Enter Into a Patent License*

49. On November 20, 2012, the Finjan Parties entered into a Confidential Settlement and Patent License Agreement with Intel ("Patent License"). Ex. A, Preamble.

50. The Patent License grants to Intel a "nonexclusive, perpetual, irrevocable license" under "Finjan's Patents." Ex. A, §3.1(a). The Patent License defines "Finjan's Patents" to encompass "all Patent Rights" with a filing date during the "Capture Period" that "Finjan" "owned or controlled at any time on or after November 6, 2012." Ex. A, §§1.10, 1.4, 3.1(a). "Finjan" is defined as Finjan Software, Inc. and Finjan, Inc., "each signing on their own behalf and on behalf of their respective Affiliates (collectively 'Finjan')." Ex. A, Preamble. "Affiliates" includes future affiliates and is defined as "any Person that, now or hereafter, directly or indirectly through one or more entities, controls or is controlled by, or is under common control with" the Finjan Parties. Ex. A, §1.2.

51. "Control" is defined as "the possession, direct or indirect, of the power to direct the management and policies of a Person, whether through the ownership of any percentage of voting interests of such Person, through contract or otherwise." Ex. A, §1.2.

52. The Patent License therefore extends to Intel a license to patents owned by Affiliates of the Finjan Parties. This includes Affiliates who did not sign the Patent License as well as future and later-formed Affiliates. *See* No. 5:17-cv-05671 at D.I. 783-4 at 8 ("under Delaware law in certain circumstances, a non-signatory created after a contract is signed can still be bound by the contract."), 11, 12 ("The Finjan License Agreement also plainly states that it binds future and later-formed affiliates…. Delaware law thus allows later-formed entities to be bound.").

53. The Patent License states that "[a]ll disputes and litigation regarding this Agreement and matters concerned with its performance shall be subject to the exclusive jurisdiction of the Court of Chancery of the State of Delaware ... or the United States District Court for the District of Delaware." Ex. A, §11.4.

54. The Patent License further states that it "shall be interpreted in accordance with and governed by federal law, or, where applicable, the laws of the State of Delaware." Ex. A, §11.4.

### I.   *Fortress Created and Controls VLSI*

55. In 2016, Fortress created VLSI in order to acquire patents from NXP and engage in monetization of NXP's patents.

56. Fortress describes itself as "a leading global investment manager" with approximately $49 billion of assets under management as of March 31, 2024. https://www.sec.gov/Archives/edgar/data/1380393/000119312511051919/d10k.htm; https://www.fortress.com/what-we-do. A portion of Fortress's business is patent monetization, including creating and controlling non-practicing entities to engage in patent monetization activities.

57. One hallmark of Fortress's NPE strategy has been the use of complicated ownership structures that hide the involvement of Fortress and its investors behind layers of limited liability

companies and partnerships. *See Uniloc 2017 LLC v. Netflix, Inc.*, No. 8:18-cv-02055-GW-DFM (C.D. Cal. Dec. 14, 2020), D.I. 188 at 9 (Netflix discussing how Uniloc, another Fortress NPE, sought to conceal the nature of its relationship with Fortress).

58. Fortress employees led and directed the negotiations with NXP for the purchase of VLSI's patents; VLSI was not created until shortly before the transaction was complete.

59. The same Fortress employee signed VLSI's original LLC agreement on behalf of each of its original ten members, who are now the members of VLSI Holdings. That Fortress employee also signed SEC filings on behalf of three of those members.

60. Fortress then ensured that it retained control over VLSI in several ways. Among other things, Fortress maintains control over VLSI through VLSI's board of directors. Fortress employees assign board members to VLSI's board of directors, and a majority of VLSI's board has always been made up of Fortress employees.

61. In addition, Fortress maintains control over VLSI's finances. Fortress implemented an independent CFO function to oversee VLSI's expenses and maintains access to VLSI's bank account. Fortress also approves any funding request from VLSI and keeps only limited funds in VLSI's bank account.

62. VLSI has claimed privilege over hundreds of communications with Fortress employees, as well as communications and documents prepared by Fortress in-house legal counsel.

63. A Fortress employee—paid by Fortress rather than VLSI—provides VLSI "general advice and legal advice" regarding VLSI's lawsuits, and VLSI's CEO doesn't "know exactly who assigned" this employee to advise VLSI other than that it was "someone at Fortress."

    **J.**    ***Fortress Acquired and Controls Finjan***

64. In July 2020, Fortress Affiliates acquired Finjan Holdings, Inc. (later converted to Finjan Holdings LLC ("FHL")), whose subsidiaries include the Finjan Parties.

65. From 2018 to 2020, Fortress employees engaged in due diligence prior to the acquisition. These efforts included numerous meetings with FHL and a review of FHL's patent license agreements.

66. After Fortress investment committees approved the investment, CFIP Goldfish Holdings LLC ("Goldfish Holdings") and CFIP Goldfish Merger Sub Inc. (collectively, "Goldfish Entities") were formed solely for the purpose of acquiring FHL.

67. Fortress filed a Schedule Tender Offer jointly with FHL and the Goldfish Entities, which states: "Parent [Goldfish Holdings] is controlled by Fortress Operating Entity I LP…, FIG Corp., … and Fortress Investment Group LLC…." After the transaction, Goldfish Holdings became the parent and sole member of FHL.

68. Finjan LLC has described the transaction as the "2020 acquisition of Finjan by Fortress." *Finjan LLC v. SonicWall, Inc.*, No. 5:17-cv-4467, D.I. 370 at 5 (N.D. Cal. Mar. 4, 2021).

69. Fortress has since maintained control over FHL. Among other things, Fortress employees have always constituted a majority of FHL's board of directors, and Fortress approves FHL's requests for funding.

70. Fortress has a financial interest in FHL. *See Finjan LLC v. Rapid7, Inc.*, No. 1:18-cv-01519, D.I. 275 (D. Del. Feb. 23, 2023) (identifying Fortress Investment Group LLC as having "a direct or indirect financial interest in Finjan LLC"); *Finjan LLC v. Palo Alto Networks*, No. 3:14-cv-4908, D.I. 213 (N.D. Cal. Dec. 22, 2022) (same).

K. *Intel Has a License to VLSI's Patents*

17

71. Following the 2020 acquisition, Fortress now controls both the Finjan Parties and VLSI. Under the terms of the 2012 Patent License, VLSI is therefore an "Affiliate," and VLSI's patents are subject to the license to Intel. *See* No. 5:17-cv-05671, D.I. 783-4 at 19 (concluding that "patents belonging to Affiliates of Finjan, as defined by the Finjan License Agreement, are subject to the license to Intel described therein").

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Intel demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Intel respectfully requests entry of judgment in its favor and against VLSI as follows:

a. Declaring that Intel is licensed to all patents owned by VLSI that fall within the Effective Period as defined in the Patent License;[1]

b. Enjoining VLSI from asserting against Intel or its Affiliates any patent covered by the Patent License;

c. Awarding to Intel its costs, expenses, and reasonable attorneys' fees; and

d. Granting Intel such other and further relief as this Court may deem just and proper in the circumstances.

---

[1] VLSI has dismissed with prejudice or granted to Intel covenants not to sue on the following patents: U.S. Patent Nos. 7,246,027; 7,247,552; 7,523,331; 8,081,026; 6,212,633; 8,268,672; and 7,676,806. As there is no imminent threat to Intel of suit arising from these patents, they are not within the scope of Intel's requested relief.

|  |  |
|---|---|
| OF COUNSEL:<br><br>William F. Lee<br>Joseph Mueller<br>Dominic E. Massa<br>Rachel Bier<br>WILMER CUTLER PICKERING HALE<br>  & DORR LLP<br>60 State Street<br>Boston, Massachusetts 02109<br>(617) 526-6000<br><br>Mary V. Sooter<br>WILMER CUTLER PICKERING HALE<br>  & DORR LLP<br>1225 17th Street, Suite 2600<br>Denver, CO 80202<br>(720) 274-3135<br><br>Thomas G. Saunders<br>Joshua L. Stern<br>WILMER CUTLER PICKERING HALE<br>  & DORR LLP<br>2100 Pennsylvania Avenue NW<br>Washington DC 20037<br>(202) 663-6000<br><br>July 9, 2024 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Plaintiff Intel Corporation* |